UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AVALON PACKER,

               Plaintiff,

   -against-

BARD COLLEGE, LEON BOTSTEIN and
MICHÈLE DOMINY,

              Defendants.

No.  20 Civ. 3878

**COMPLAINT**
**JURY DEMAND**

## INTRODUCTION

1.      For years, Bard College knowingly employed a sexual predator as an instructor in its music program and allowed him to prey on students.

2.      A 2015 investigation found that music instructor Carlos Valdez had assaulted a student, and recommended that he be fired from his position at Bard.

3.      But Bard did not fire Valdez. It kept him on as a faculty member and took no steps to protect students from him.

4.      Astonishingly, Bard allowed Valdez to continue to meet with students in a windowless, soundproof basement office for one-on-one music lessons. It provided no warning to students that Valdez was a known danger. That he was a predator was a fact known *only* to Bard College. The students Valdez continued to teach in his basement office were none the wiser.

5.      It is hardly surprising, then, that Valdez once again assaulted a student just a couple of years later. His victim this time was Avalon Packer, a freshman music student with a promising future in percussion.

6.      Valdez groomed Ms. Packer, sending her private Facebook messages from his personal account before she even stepped foot on campus and spending months developing a mentor-mentee relationship. He then used the power and influence he had developed over to repeatedly assault her in his basement office during private music lessons.

7.      Valdez then continued to harass and retaliate against Ms. Packer continuously throughout her time as a Bard student.

8.      Valdez mocked Ms. Packer and threatened that if she told anyone what happened, the College would protect him. He had good reason for thinking that: It's exactly what had happened before, when another victim had come forward.

9.      After suffering in silence for well over two years, Ms. Packer finally reported Valdez to the College's Title IX office. After an extensive investigation, the College substantiated her charges and found him guilty of assaulting her. This time, it had no choice but to fire him.

10.      Only as the Title IX investigation was proceeding toward its conclusion did Ms. Packer learn for the first time that Bard knew about Valdez's previous predatory behavior and had knowingly refused to fire him. She had assumed that Bard would never have allowed Valdez to teach private lessons alone with her for college credit knowing that she was at risk of being assaulted. When she learned otherwise, she was sickened and shocked.

11.      In the meantime, Ms. Packer's college experience had been irretrievably tarnished. To avoid Valdez, she switched her musical focus. Her grades suffered. Her anxiety and fear led her to move off campus, even as she was forced to continue paying for room and board.

12.     Ms. Packer should never have been exposed to Valdez. Because it actively protected a known predator, Bard College is liable for the suffering Ms. Packer experienced.

## THE PARTIES

13.     Plaintiff Avalon Packer is a 21-year-old student enrolled at Bard College. She began her studies in September 2016.

14.     Defendant Bard College ("the College") is a private nonsectarian college located in Annandale-on-Hudson, New York. Upon information and belief, the College receives federal financial assistance.

15.     Defendant Leon Botstein was, at all times relevant herein, the President of Bard College. Prior to September 2016, when Ms. Packer enrolled at Bard College, Defendant Botstein had actual knowledge of Carlos Valdez's history of sexual harassment and assault.

16.     Defendant Michèle Dominy was the Dean of Bard College from 2001 to 2015 and Vice President of Bard College from 2015-2016. Prior to September 2016, when Ms. Packer enrolled at Bard College, Defendant Dominy had actual knowledge of Carlos Valdez's history of sexual harassment and assault.

## JURISDICTION AND VENUE

17.     This action arises under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, and the New York State Human Rights Law, N.Y. Executive Law § 296.

18.     This Court has subject matter jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. §§ 1331 because Plaintiffs' claims arise under the laws of the United States, namely 20 U.S.C. § 1681.

19.     This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

20.     Venue lies in this Court pursuant to 28 U.S.C. § 1391(b) because Plaintiffs' claims arose in this judicial district.

## JURY DEMAND

21.     Plaintiff demands trial by jury in this action.

## FACTUAL ALLEGATIONS

### *Valdez Grooms a Teenager*

22.     Avalon Packer began her freshman year at Bard College in Fall 2016.

23.     Before Ms. Packer even started school, Bard instructor Carlos Valdez sent Avalon a Facebook message from his own personal account. In the message, he sent her his personal cell phone number and told her to call him.

24.     Ms. Packer, who had turned 18 just two months earlier, was surprised that a Bard instructor was contacting her through his personal account, but, aware he was the school's primary percussion instructor, she was eager to make a good impression. She called him.

25.     Valdez told Avalon he wanted to meet her the next day to give her a tour of the college and discuss her studies. He praised her drumming skills and told her he had looked up videos of her online. Ms. Packer agreed to meet with him to discuss percussion and her Bard education.

26.     At that first meeting, Valdez pushed Ms. Packer to take private lessons with him. He disparaged the other drum instructor and told her that he, Valdez, would provide her perks if she signed up for lessons with him. He promised that he would make her his Teaching Assistant, even though that job was typically reserved for

upperclassmen. He promised her a private office, help navigating Bard's bureaucracy, and connections to orchestras and gigs—perks most students do not receive.

27.    Ms. Packer agreed to be his student. Valdez set her up with an office in the basement, near his own.

28.    Ms. Packer received course credit from Bard for her lessons with Valdez during the 2016-2017 academic year.

### Valdez Begins His Campaign of Harassment and Assault

29.    As soon as Ms. Packer agreed to take lessons from Valdez, his inappropriate behavior escalated. Valdez began each lesson with a long, overly familiar hug. He repeatedly questioned Ms. Packer about her personal life and her boyfriends.

30.    Valdez often stood extremely close to Ms. Packer during their lessons—which took place in a sound-proof room in the basement—and massaged her neck and shoulders in the guise of "correcting" her posture.

31.    In her years of percussion instruction, Ms. Packer had never been told she had poor posture—but Valdez constantly put his hands on her shoulders, neck, and back while she was playing, telling her he needed to fix her terrible posture.

32.    In Ms. Packer's years of drumming instruction, no one had ever massaged her back or kept their hands on her shoulders while she played.

33.    Ms. Packer noticed that Valdez acted inappropriately around other female students, too. She saw him ogle the female students, undressing them with his eyes. She saw him lick his lips suggestively to multiple female students. He gave many female students overly friendly hugs—though he never hugged the male students. Ms. Packer

also caught him looking at her breasts as she marched during Samba Ensemble, a class
Valdez taught.

34.    Often, Valdez told Ms. Packer to play louder so that, as she played more
vigorously, her breasts would bounce. He frequently pressed his body into her back
while she sat playing.

35.    One time in late Fall 2016, Valdez pressed himself into Ms. Packer's back
while she played and she could feel his erection. She quickly jumped up from her seat
and grabbed her bag to leave.

36.    Valdez's harassing behavior made Ms. Packer deeply uncomfortable. But
at Bard, private lessons were required for her percussion major, and Valdez was the only
instructor who taught the style of drumming she was interested in. Ms. Packer wanted
to stop her lessons but didn't think she would be permitted to do so.

37.    On a Monday in February 2017, at the end of a private lesson, Valdez
sexually assaulted Ms. Packer again.

38.    As the lesson was ending, Ms. Packer was preparing to leave. Suddenly,
Valdez grabbed her, pulled her toward him, and, with both arms wrapped around her,
kissed her forcibly on the mouth.

39.    He tried to stick his tongue in her mouth, but she kept her mouth closed.

40.    She froze before finally being able to break free.

41.    Valdez was standing between Ms. Packer and the door, so she maneuvered
around him and hurried out of the room.

42.    Disgusted by the assault, Ms. Packer skipped that Friday's Samba
Ensemble.

6

43.     To avoid Valdez as long as possible, Ms. Packer told him that she had broken her toes and thus would not be able to attend her next private lesson.

44.     She used this excuse to avoid all her private lessons with Valdez for the rest of February and all of March, feigning a limp every time she saw him.

45.     Shortly after the February incident, Ms. Packer saw Valdez while walking across campus. Unprompted, he told her not to bother making a Title IX complaint about what he had done to her, because Bard's Title IX process was "bullshit" and he "always wins."

46.     Valdez told her, in sum and substance, "I'm still here, and Title IX's a waste of time."

47.     Although Ms. Packer did not understand the specifics of this assertion at the time, she heeded Valdez's implicit threat and did not immediately report his conduct.

48.     Ms. Packer avoided Valdez for as long as she could. But she was worried about failing her private lessons, and so she reluctantly returned to class in April.

49.     Valdez's harassment continued. He continued to hug her when they met for lessons, and continued to ask her inappropriate and prying questions about her personal life.

***Valdez Continues to Harass and Retaliate Against Ms. Packer***

50.     Valdez's ongoing crusade of harassment, hostility and discrimination persisted well into the 2017-2018 and 2018-2019 academic years.

51.     Throughout this period, Valdez's conduct toward Ms. Packer was threatening, intimidating and humiliating, and interfered substantially with Ms. Packer's education at Bard.

52.     After Ms. Packer rebuffed Valdez's sexual advances, he began to retaliate against her. He grew colder and more hostile to Ms. Packer. He belittled her talents. He told other students that Ms. Packer didn't know anything about drumming; soon, other students began avoiding Ms. Packer and refusing to perform or record sessions with her. He badmouthed her to other students, alienating her from her peers.

53.     Instead of offering her leadership opportunities in class as he had previously done, Valdez began ignoring Ms. Packer and acting as though she were invisible.

54.     In her sophomore year (2017-2018), Ms. Packer felt compelled to fundamentally alter the focus of her studies away from Brazilian percussion to West African genres, in order to reduce her contact with Valdez.

55.     Nonetheless, Valdez continued to find ways to undermine Ms. Packer.  For example, when she began a new djembe club during her sophomore year, Valdez effectively sabotaged the group by seizing the drums they relied on without notifying them in advance.

56.     Valdez's harassment and retaliation continued into the 2018-2019 academic year, when Ms. Packer was a junior.

57.     Valdez reneged on his promise to make Ms. Packer his teaching assistant for the Samba Ensemble and gave the job to another student.

58.     He claimed that Ms. Packer had "social issues," and used private information about her mental health history that he had learned from inappropriate

conversations he initiated during private lessons to justify his retaliation and harassment.

59.     In class, Valdez disparaged Ms. Packer to other students and turned the other students in the ensemble against her.

60.     He made a point of hugging and laughing with other female students in front of Ms. Packer, while ignoring and belittling Ms. Packer.

61.     Also during Ms. Packer's junior year, Valdez attempted to take away the office he had given her, claiming that someone more important needed it.

62.     He also continued to sabotage the djembe club by misappropriating drums from Ms. Packer's office. When Ms. Packer reported the issue to the department chair, Valdez confronted her publicly, screaming and cursing.

63.     Valdez's harassment, assault, and retaliation traumatized Ms. Packer. Though she tried to repress what had happened to her, she found herself distracted and increasingly distraught. Ms. Packer felt trapped: If she spoke up and Valdez—one of only a few percussion instructors at Bard—was fired, her percussion education would come to a halt. On the other hand, she could not bear to continue private lessons with Valdez, even though they were required for graduation. Ms. Packer felt betrayed by a mentor with whom she had previously felt a close connection.

64.     Over time, Ms. Packer fell into a depression, often feeling like she was not living in her body. She had difficulty concentrating; many days, she could not get out of bed. She suffered repeated graphic, terrifying nightmares involving Valdez following her, forcing her to have intercourse, or manipulating her to kill herself. She despaired about her music education.

65.    The depression, anxiety, and trauma caused by Valdez's conduct impeded Ms. Packer's ability to follow through on complex tasks.

66.    By the spring of her junior year, Ms. Packer's grades had slipped to the point that she was placed on academic probation.

67.    Ms. Packer felt so unsafe on campus that she moved off campus, even though she had to continue paying room and board to Bard.

68.    Ms. Packer was a particularly vulnerable student. She had been hospitalized as a young teen after attempting suicide, and had a history of mental health struggles. Having spent months probing into Ms. Packer's personal life and building her trust, Valdez was fully aware of her emotional fragility. Indeed, he tried to use it against her to intimidate her into silence about his assault.

### *Bard College Acknowledges Valdez Harassed and Assaulted Ms. Packer*

69.    Ms. Packer met with Bard's Dean of Students Bethany Nohlgren in 2019. When pressed to discuss her emotional well-being during that meeting, she broke down and finally told Nohlgren what Valdez had done to her.

70.    Ms. Packer then met with Defendant Kimberly Gould, Bard's Title IX Coordinator, on July 31, 2019 to make her formal report.

71.    A Title IX investigation by an outside investigator, Melissa Dizon, Esq. of Dizon & Shedden, P.C., confirmed Ms. Packer's allegations.

72.    A copy of Ms. Dizon's findings is attached to this Complaint as Exhibit A.

73.    Relying on the findings of the investigation, which were based on extensive witness interviews and documentary evidence, Malia K. Du Mont, Bard's Chief of Staff

and Vice President for Strategy and Policy, found that Valdez had violated Bard College's 2016-2017 Gender-Based Misconduct Policy in two ways.

74.    First, the College found Valdez had engaged in nonconsensual sexual contact with Ms. Packer when he repeatedly hugged, touched, and massaged her, pressed his erection into her back, and forcefully kissed her—all without her consent.

75.    Second, the College found that Valdez sexually harassed Ms. Packer by making repeated unwanted sexual contact with her and telling her not to bother going to the College's Title IX office.

76.    Ms. Du Mont noted that "multiple witnesses" had seen Valdez "regularly engage in physical contact with students—hugging, massaging—that is not always consensual." Ex. A.

77.    Ms. Du Mont noted further that multiple witnesses reported that Valdez "pursued physical forms of affection on an ongoing basis." *Id.*

78.    Ms. Du Mont further found that Valdez's warning to Ms. Packer not to report his conduct to Title IX "was further creation of a hostile environment, because [Ms. Packer] took this statement as a threat, [Ms. Packer was] scared, and [Ms. Packer] thought that [her] ability to do well in the Music Program would be affected if [she] reported Mr. Valdez's conduct." *Id.*

79.    The investigation confirmed that these actions adversely affected Ms. Packer's grades and her musical education at Bard.

80.    As a result of the investigation and substantiated findings, Bard College fired Valdez.

### *Ms. Packer Discovers Bard Knew that Valdez Preyed on Students—and Did Nothing to Stop Him*

81.    On or about December 8, 2019, as part of the Title IX investigation, Ms. Packer was allowed to read the summaries of the investigator's interviews with Valdez and other witnesses.

82.    Ms. Packer learned that Valdez had been the subject of at least two prior Title IX complaints.

83.    Ms. Packer learned that, in the 2014-2015 academic year, another student had reported an assault strikingly similar to Ms. Packer's: Valdez had hugged, grabbed, and kissed another female student without consent.

84.    The investigation into that incident was substantiated by the College and the investigator recommended Valdez be terminated for his conduct.

85.    However, Valdez apparently appealed directly to College administrators, including the College's president, Defendant Leon Botstein and Bard's former Dean, Defendant Michèle Dominy.

86.    These administrators met Valdez at his home, ostensibly to discuss appropriate behavior with students.

87.    Upon information and belief, Valdez wrote a letter of apology and took an online anti-harassment course.

88.    With that, Bard dropped the matter and reinstated Valdez.

89.    A Bard administrator told Ms. Dizon, the attorney investigating Ms. Packer's complaint, that he thought the message "had been received" by Valdez when administrators spoke to him after the previous substantiated complaint.

90.     It had not. With full knowledge that Valdez had assaulted a student and forcibly kissed her, Bard took no further action before letting him loose on students again, overriding the recommendation of the Title IX investigator.

91.     Indeed, in response to Ms. Packer's complaint, Ms. Du Mont acknowledged that Valdez continued a pattern of inappropriate behavior long known to the College: "Mr. Valdez's statements and behavior indicate that despite previous warnings, he persisted in failing to recognize that such physical contact is inappropriate when instigated by a faculty member with a student, and creates an environment of unwanted physical interaction." Ex. A.

92.     Bard allowed Valdez to continue teaching students in one-on-one private lessons in an isolated, soundproof basement room.

93.     Bard's failure to take meaningful action to protect students from Valdez led directly to Valdez's harassment and assault of Ms. Packer.

## FIRST CAUSE OF ACTION
### Title IX – 20 U.S.C. § 1681
### (Against Bard College)

94.     Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

95.     Plaintiff is a female student at Bard College.

96.     Upon information and belief, at all times relevant to this action, Defendant Bard College received and continues to receive federal financial assistance.

97.     Bard College owed a duty to protect Plaintiff, as a student enrolled at the College, from gender-based discrimination, including sexual harassment, retaliation, and a hostile educational environment.

13

98.     Bard College discriminated against Plaintiff by subjecting her to different treatment on the basis of her gender, including by subjecting her to sexual assault, harassment, retaliation, and a hostile educational environment.

99.     Bard College failed to prevent, respond to, adequately investigate, and/or appropriately resolve instances of gender discrimination, including sexual assault, harassment, and retaliation, which caused Plaintiff to be harassed or made her more vulnerable to such harassment and subjected her to a hostile educational environment.

100.     Bard College was deliberately indifferent to the risk that a member of its staff, Carlos Valdez, would harass and assault Plaintiff, retaliate against her, and subject her to a hostile educational environment.

101.     Bard College knew that Valdez had harassed and assaulted students in the past, and had determined that such harassment violated Bard College policy and Title IX. Bard failed to protect Plaintiff from this risk, which was known to the College but not to Plaintiff.

102.     In light of the continuing and ongoing, severe, and pervasive nature of the harassment, assault, retaliation, and hostile educational environment Plaintiff suffered, Bard College's unlawful conduct as alleged herein constituted a single continuing violation of Title IX.

103.     As a direct and proximate result of Bard College's unlawful discrimination, Plaintiff suffered and will continue to suffer harm, including but not limited to loss of educational opportunities, humiliation, embarrassment, reputational harm, emotional physical, and psychological distress, physical harm, and other damages.

## SECOND CAUSE OF ACTION
New York Executive Law §§ 296(4), 296(6)
(Against all Defendants)

104.    Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

105.    Plaintiff is a female student at Bard College.

106.    Defendant Bard College is an educational institution as defined by New York Executive Law § 292(37).

107.    During all times relevant to this claim, Defendants Botstein and Dominy (collectively, the "Individual Defendants") were at employed by Bard College.

108.    Bard College discriminated against Plaintiff by subjecting her to different treatment on the basis of her gender, including by subjecting her to sexual assault, harassment, retaliation, and a hostile educational environment.

109.    Bard College failed to prevent, respond to, adequately investigate, and/or appropriately resolve instances of gender discrimination, including sexual assault, harassment, and retaliation, which caused Plaintiff to be harassed or made her more vulnerable to such harassment and subjected her to a hostile educational environment.

110.    Bard College was deliberately indifferent to the risk that a member of its staff, Carlos Valdez, would harass and assault Plaintiff, retaliate against her, and subject her to a hostile educational environment.

111.    The Individual Defendants aided and abetted Bard College's unlawful discrimination by failing to prevent, respond to, adequately investigate, and/or appropriately resolve instances of gender discrimination, including sexual assault and harassment by Carlos Valdez, which caused Plaintiff to be harassed or made her more vulnerable to such harassment and subjected her to a hostile educational environment.

The Individual Defendants were deliberately indifferent to the known risk that a staff member, Carlos Valdez, would harass, assault, and retaliate against Plaintiff and subject her to a hostile educational environment.

112.    As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff suffered and will continue to suffer harm, including but not limited to loss of educational opportunities, humiliation, embarrassment, reputational harm, emotional physical, and psychological distress, and other damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court grant the following relief jointly and severally against Defendants:

1.    Compensatory damages in an amount to be determined;

2.    Punitive damages in an amount to be determined;

3.    Pre-judgment interest as allowed by law;

4.    An order awarding Plaintiff reasonable attorneys' fees, together with costs and disbursements; and

5.    Such other further relief as the Court may deem just and proper.

Dated: May 19, 2020
      New York, New York

KAUFMAN LIEB LEBOWITZ & FRICK LLP

By: _____/s/_____
        David A. Lebowitz
        Alison Frick
10 East 40th Street, Suite 3307
New York, New York 10016
(212) 660-2332

*Attorneys for Plaintiff*